UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DARLENE MARIA LOPARDO,       )
                                      )
      Plaintiff,            )
                                      )
      v.               )   Case No. 3:17-cv-30185-KAR
                                      )
NANCY A. BERRYHILL,        )
Acting Commissioner of Social         )
Security Administration,          )
                                      )
      Defendant.        )


MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT
ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF
THE COMMISSIONER
(Docket Nos. 12 & 14)

ROBERTSON, U.S.M.J.

I.      INTRODUCTION

Darlene Maria Lopardo ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c)(3)

challenging the final decision of the Acting Commissioner of Social Security ("Commissioner")

denying her application for Social Security Disability Insurance Benefits ("DIB").  Plaintiff

applied for DIB on November 6, 2014, alleging a September 1, 2014 onset of disability, due to

problems stemming from the following impairments:  depression; anxiety; heel spur syndrome;

coccyx pain; and plantar fasciitis (A.R. at 185, 202, 206).[1]  On September 20, 2016, the

Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and denied her

---

[1] A copy of the Administrative Record (referred to herein as "A.R.") has been filed under seal
(Dkt. No. 10).

1

application for DIB (*id*. at 19-27).[2]  The Appeals Council denied review (*id*. at 1-8) and thus, the

ALJ's decision became the final decision of the Commissioner.  This appeal followed.

Plaintiff appeals the Commissioner's denial of her claim on the ground that the decision is

not supported by "substantial evidence" under 42 U.S.C. § 405(g).  Pending before this court are

Plaintiff's motion for judgment on the pleadings requesting that the Commissioner's decision be

reversed or remanded for further proceedings (Dkt. No. 12), and the Commissioner's motion for

an order affirming the decision of the ALJ (Dkt. No. 14).  The parties have consented to this

court's jurisdiction (Dkt. No. 20).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons

stated below, the court will grant the Commissioner's motion for an order affirming the decision

and deny Plaintiff's motion.

II.     LEGAL STANDARDS

A.     Standard for Entitlement to Disability Insurance Benefits

In order to qualify for DIB, a claimant must demonstrate that she is disabled within the

meaning of the Social Security Act.[3]  A claimant is disabled for purposes of DIB if she "is

unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

423(d)(1)(A).  A claimant is unable to engage in any substantial gainful activity when she

is not only unable to do [her] previous work, but cannot, considering [her] age, education,
and work experience, engage in any other kind of substantial gainful work which exists in

___

[2] Plaintiff had applied for DIB and Supplemental Security Income on October 19, 2012 alleging
an onset of disability on December 1, 2011 (A.R. at 65).  On August 28, 2014, a different ALJ
determined that she was capable of performing her past work as a cashier and, therefore, was not
disabled (*id.* at 72, 73).  Plaintiff did not challenge that determination.

[3] There is no challenge to Plaintiff's financial need for purposes of entitlement to DIB, *see* 42
U.S.C. § 423(a)(1)(A).

the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A). The Commissioner evaluates a claimant's impairment under a five-step sequential evaluation process set forth in the regulations promulgated by the Social Security Administration ("SSA"). *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals a listed impairment contained in Appendix 1 to the regulations; (4) whether the impairment prevents the claimant from performing previous relevant work; and (5) whether the impairment prevents the claimant from dong any work considering the claimant's age, education, and work experience. *See id; see also Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process). If the hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step. 20 C.F.R. § 404.1520(a)(4).

Before proceeding to steps four and five, the Commissioner must make an assessment of the claimant's Residual Functional Capacity ("RFC"), which the Commissioner uses at step four to determine whether the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work. *See id.*

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

The claimant has the burden of proof through step four of the analysis, including the burden to demonstrate RFC. *Flaherty v. Astrue*, Civil Action No. 11-11156-TSH, 2013 WL 4784419, at *8-9 (D. Mass. Sept. 5, 2013) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). At step five, the Commissioner has the burden of showing the existence of jobs in the national economy that the claimant can perform notwithstanding his or her restrictions and limitations. *Goodermote*, 690 F.2d at 7.

B.    Standard of Review

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing. *See* 42 U.S.C. § 405(g). Judicial review "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000). The court reviews questions of law *de novo*, but "the ALJ's findings shall be conclusive if they are supported by substantial evidence, and must be upheld 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion,' even if the record could also justify a different conclusion." *Applebee v. Berryhill*, 744 F. App'x 6, 6 (1st Cir. 2018) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981) (citations omitted). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003)). In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. *See Applebee,* 744 F.

App'x. at 6.  That said, the ALJ may not ignore evidence, misapply the law, or judge matters entrusted to experts.  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

III.   <u>FACTS</u>

Plaintiff alleges that the ALJ erred by:  (1) omitting depression and anxiety as a severe impairment at step two of the sequential evaluation process; (2) limiting his consideration of medical evidence and failing to assign weight to medical consultants' opinions; and (3) failing to include restrictions on Plaintiff's ability to stoop, bend, and balance in the RFC notwithstanding his inclusion of those restrictions in the hypothetical that he posed to the Vocational Expert (VE) at the hearing.  Accordingly, the background information will be limited to facts relevant to those issues and additional pertinent facts will be discussed in the analysis.

A.   <u>Plaintiff's Background</u>

At the time of the hearing before the ALJ in August 2016, Plaintiff was 49 years old and lived with her mother (*id.* at 39, 51).  Plaintiff graduated from high school and from college with an associate degree in office procedure (*id.* at 39, 207).  Plaintiff had worked as a cashier and a sales associate in retail stores (*id.* at 207).  She was employed as a food service worker in an assisted living facility for seven and one-half years from November 2006 to February 2014 (*id.* at 39-40, 207, 497).  She testified that she was laid off due to a management change and her complaints about chronic pain (*id.* at 40).  During the first two years of her employment at the assisted living facility, she worked full-time but decreased her hours to part time thereafter because of her medical conditions (*id.* at 40, 269).

B.   <u>Consultative Examinations</u>

1.   Leon Hutt, Ph.D.

Leon Hutt, Ph.D. conducted a consultative examination of Plaintiff on April 30, 2013 (*id.* at 269).  At the time of Dr. Hutt's examination, Plaintiff was working part-time as a wait staff member (*id.*).  Her chronic lower back pain prevented her from working full-time (*id.* at 271-72).

Plaintiff reported being depressed due to her physical limitations and family members' deaths and illnesses (*id.* at 270).  She described herself as being a "worrywart" from the time she was a child (*id.* at 270-71).  She stated that she had trouble sleeping and frequently felt tired even after she got a good night's sleep (*id.* at 270).

Plaintiff told the doctor that she had been a runner but had stopped running two years before when the pain in her coccyx increased (*id.*).  She went to the movies, the theater, or a restaurant with a friend or family members about once a week (*id.*).  She sometimes went to a casino with a group of people (*id.*).  She had a learner's permit to drive, which she renewed every two years, but had not gotten a driver's license for twenty or twenty-five years because she was "fearful" (*id.*).

The Mental Status Examination revealed that Plaintiff's speech was "generally clear, relevant, and coherent" (*id.*).  Her attentional capacity was "fair" (*id.* at 271).  According to Dr. Hutt, Plaintiff functioned in the low average range of adult intellectual functioning (*id.*).  Her affect was "appropriate" and her mood was "mildly anxious" (*id.*).  "[W]ith the exception of difficulty sleeping, and possibly feeling tired, [Plaintiff] did not seem to have symptoms of depression" (*id.*).  Dr. Hutt diagnosed:  generalized anxiety disorder; adjustment disorder with depressed mood; and rule out ADD (*id.*).  He assigned a Global Assessment of Functioning

(GAF) score of 70 (*id.*).[4]  Dr. Hutt opined that Plaintiff could "understand, follow, and remember work-related instructions and procedures" (*id.*).

### 2.  Willard Brown, D.O.

Willard Brown, D.O. of the University of Massachusetts Medical Center (UMMC) Disability Evaluation Services examined Plaintiff on November 5, 2014 (*id.* at 490).  The examination of her lumbar spine revealed scoliosis with a curvature to the left (*id.* at 492). Although she experienced some pain, she was able to perform a normal flexion and extension, right and left rotation, and right and left lateral flexion (*id.*).  Her left foot and ankle were "essentially normal" and could bear weight (*id.*).  However, her right heel was extremely tender to palpation (*id.*).  Her inability to bear weight on her right foot caused her to limp (*id.* at 491, 492).  Dr. Brown diagnosed "probable plantar fasciitis right foot now acute, left foot in remission" (*id.* at 493).

### 3.  Victor J. Carbone, Ph.D.

On December 4, 2014, Victor J. Carbone, Ph.D. of the UMMC Disability Evaluation Services examined and evaluated Plaintiff (*id.* at 496).  Plaintiff reported that "she tries to exercise a couple times per week, . . . mostly she just does domestic chores around the house . . .

---

[4] "'The Global Assessment of Functioning Scale ranges from 0 ("persistent danger of severely hurting self or others") to 100 ("superior functioning").  A GAF score of 41–50 indicates "serious symptoms" and "serious impairment in social, occupational, or school functioning."  Scores of 51–60 and 61–70 reflect moderate symptoms/moderate impairment in functioning and some mild symptoms/some difficulty in functioning, respectively.'"  *Viveiros v. Berryhill*, Civil Action No. 1:15-cv-13100-ADB, 2018 WL 3057730, at *5 n.3 (D. Mass. June 20, 2018) (quoting *Rivera ex rel. Z.G.O. v. Astrue*, No. CIV. A. 08-11109-GAO, 2009 WL 4063223, at *1 n.3 (D. Mass. Nov. 24, 2009)).

and tries to sleep when she is not doing that" (*id.* at 497).  She reported that her pain is a "major problem" (*id.*).  Dr. Carbone assessed a GAF score of 55 (*id.* at 498).[5]

C.    RFC Assessments by State Agency Consultants

1.    January 2015

On January 6, 2015, Ginette Langer, Ph.D. conducted a Psychiatric Review Technique (PRT) assessment based on a review of Plaintiff's records (*id.* at 80-83, 86).  Dr. Langer noted that Plaintiff had "some depression and anxiety but mostly her pain is interfering with her working" (*id.* at 86).  Dr. Langer opined that Plaintiff had mild restrictions of daily living activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (*id.*).  Plaintiff  had not experienced any repeated episodes of decompensation of extended duration (*id.*).  Dr. Langer's mental RFC assessment indicated that Plaintiff had moderate limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, "complete a normal workday and workweek without interruptions from psychologically based symptoms and . . .  perform at a consistent pace without an unreasonable number and length of rest periods" (*id.* at 90).  According to Dr. Langer, Plaintiff would be able "to concentrate, sustain attention and keep pace on simple tasks for 2 [hour] spans for 8/5/40" (*id.* at 86, 90).

John Benanti, MD., a nonexamining medical consultant, evaluated Plaintiff's physical RFC on January 20, 2015 (*id.* at 87-89).  He noted that "imaging studies of [Plaintiff's] feet have been negative save for [a] calcaneal spur on her left foot" (*id.* at 89).  Based on his review of Plaintiff's medical records, Dr. Benanti found that, although Plaintiff suffered from "chronic right

_____

[5] The court's record contains four pages of Dr. Carbone's report (A.R. at 496-499 [B15F]). However, the report consisted of five pages and page 3 of the report is missing from the record (*id.*).  It appears that Plaintiff and the Commissioner overlooked its absence.

foot pain" and coccygeal discomfort, she retained the RFC to: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk and sit, with normal breaks, for about six hours in an eight-hour work day; (3) stoop frequently; and (4) occasionally climb ramps and stairs, balance, kneel, crouch, crawl, and push and pull with her right lower extremities (*id.* at 87-88). However, she could never climb ladders, ropes, and scaffolds, and had to avoid heights and work with heavy machinery (*id.* at 88-89). Dr. Benanti stated that Plaintiff should be able to change her position for five minutes every hour to relieve discomfort (*id.* at 88).

The examiners determined that Plaintiff could perform her past job as a food service worker and, thus, was not disabled (*id.* at 91-92).

### 2. April - May 2015

On April 21, 2015, Joseph A. Whitehorn, Ph.D. reviewed Plaintiff's treatment records for the purpose of conducting PRT and mental RFC assessments (*id.* at 102-03). His findings mirrored Dr. Langer's earlier findings (*id.* at 96-100, 102-03, 107-08). Dr. Whitehorn noted that Plaintiff's function report (form 3373), which she completed in March 2015, described her ability to participate in "a pretty full array of daily activities, limited almost entirely by perceived medical problems and pain, not by [psychological medical evidence of record]" (*id.* at 103, 232-39).

Eric Purins, M.D. reevaluated Plaintiff's physical RFC on May 6, 2015 (*id.* at 104-06). Dr. Purins generally agreed with Dr. Benanti's earlier RFC assessment (*id.* at 104-05). Dr. Purins stated that the February 2015 records of Plaintiff's podiatrist indicated that "with treatment, [Plaintiff's] foot pain does not objectively limit [her standing and walking] capacity" (*id.* at 105). Like Dr. Benanti, Dr. Purins indicated that Plaintiff would need to change position for five minutes each hour to relieve her back/tailbone pain (*id.*).

Because Dr. Whitehorn and Dr. Purins agreed with the other state agency consultants' assessment that Plaintiff could perform her past job as a food service worker, they opined that she was not disabled (*id.* at 109).

D.    The ALJ Hearing

Plaintiff and independent VE Tamara Prairie testified at the hearing before the ALJ on August 5, 2016 (*id.* at 35).  Plaintiff testified about the pain in her lower back, coccyx, right leg, and right foot.  She also described her depression and anxiety.

According to Plaintiff, she experienced "horrible" pain in her back (*id.* at 55).  She described it as a constant "throb, sharp, dull ache" (*id.* at 44).  She indicated that message therapy helped "a little" along with Advil and Aleve (*id.*).  The pain limited her ability to bend, to lift objects that weighed more than ten pounds, and to stand or sit for more than one hour (*id.* at 45).

Plaintiff testified that she often got "charley horses" in her right calf and experienced constant pain of 6 or 7 on a scale of 1 to 10 from the spurs in her right heel (*id.* at 41-42, 46-47).  "[C]onstant[]" standing or walking exacerbated the pain (*id.* at 49).  Compression socks decreased the swelling in her right foot "a little," Advil and Aleve provided pain relief, and gabapentin alleviated the pain at night (*id.* at 48-50).  Changing position also relieved the pain in her calf and foot (*id.* at 50).  She could sit and stand comfortably for about an hour before changing position (*id.* at 50-51).  She was able to walk about a block and do light housekeeping, such as washing the dishes and sweeping the floor, could use a treadmill once a week, and could occasionally ride a bicycle (*id.* at 42, 51, 55).  She was scheduled to have surgery on her calf in September 2016 (*id.* at 41, 48).

Plaintiff was being treated by a psychotherapist "once or twice a month" for depression and anxiety (*id.* at 52).  When she was depressed, she felt restless, anxious, and complained

about pain "a lot" (*id.* at 53). The prescribed medication helped "a little" (*id.*). She relaxed by reading, doing word puzzles, watching TV, and listening to music (*id.*). "Sometimes" she had difficulty concentrating and staying focused (*id.*).

In order to elicit the VE's opinion of whether Plaintiff could perform her past jobs or jobs that existed in the regional and national economy, the ALJ asked the VE to assume a person with Plaintiff's age, education, and work experience who could engage in sedentary work (*id.* at 58).

> There would be no climbing, no kneeling or crawling, no heights or ladders, no hazards or dangerous machinery, no foot pedals with the right leg, no twisting, no rough terrain, no more than occasional stooping, bending or balancing. She would be limited to simple, routine, repetitive tasks, which require[] concentration for two-hour time periods.

(*id.*). The VE testified that the hypothetical individual could not perform Plaintiff's past jobs, but could work as an assembler, inspector, and information clerk (*id.*). Those jobs would also be available to a person who needed to alternate between sitting and standing every ten minutes (*id.* at 59). However, those jobs would not be available to a person who needed to elevate her legs "[s]everal feet off the ground" throughout the course of the workday or who missed work three or more days per month (*id.* at 59-60).

E. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ conducted the five-part analysis required by the regulations. *See* 20 C.F.R. § 404.1520(a)(4)(i-v); *see also Goodermote*, 690 F.2d at 6-7. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of September 1, 2014 (A.R. at 21). *See* 20 C.F.R. § 404.1571 *et seq.* At step two, the ALJ found that Plaintiff had the following severe impairments: scoliosis and sclerosis; right plantar fasciitis/heel spur syndrome; right knee patella femoral arthritis/chondromalacia; and diverticulosis (A.R. at 21). *See* 20 C.F.R. § 404.1520(c). The ALJ found that Plaintiff's hypertension was not severe because it was controlled (A.R. at 21). For

purposes of step three, the ALJ reviewed Plaintiff's severe impairments and her mental

impairments, which he did not address at step two, and the related "paragraph B" and "paragraph

C" criteria, and determined that her impairments, either alone or in combination, did not meet or

medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (*id.* at 21-22). *See* 20 C.F.R. §§ 404.2520(d), 404.1525, 404.1526.

Before proceeding to steps four and five, the ALJ assessed Plaintiff's RFC for use at step

four to determine whether she could perform past relevant work and, if the analysis continued to

step five, to determine if she could do other work. *See* 20 C.F.R. § 404.1520(e). The ALJ

determined that the Plaintiff had the RFC to perform the full range of sedentary work,[6] with the

following additional limitations:

> no climbing, twisting, kneeling, crawling; no right foot controls; no rough terrain; no
> heights; no ladders; no hazardous/dangerous machinery. The claimant is limited to
> simple routine tasks which require concentration for 2 hour time periods.

 (A.R. at 22). At step four, the ALJ found that Plaintiff was not able to perform her past relevant

work (*id.* at 26). *See* 20 C.F.R. § 404.1565. However, considering Plaintiff's age, education,

work experience, and RFC, Plaintiff could perform the sedentary jobs of assembler, inspector,

and information clerk, which existed in the national and regional economies (A.R. at 26-27). *See*

20 C.F.R. §§ 404.1569, 404.1569(a). Consequently, on September 20, 2016, the ALJ concluded

that Plaintiff was not disabled since the date of her application, September 1, 2014 (A.R. at 27).

*See* 20 C.F.R. § 404.1520(g).

---

[6] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined
as one which involves sitting, a certain amount of walking and standing is often necessary in
carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and
other sedentary criteria are met." 20 C.F.R. § 416.967(a).

IV.  ANALYSIS

**A.  Although the ALJ failed to address Plaintiff's depression and anxiety as impairments at step two, the error was harmless because he considered them at step three and included related limitations in the RFC.**

Plaintiff seeks remand based on the ALJ's omission of depression and anxiety as severe impairments at step two (Dkt. No. 13 at 9-12).  The Commissioner persuasively argues that the ALJ's omission was inadvertent and clearly harmless in view of the ALJ's consideration of Plaintiff's mental impairments at step three and his inclusion in the RFC of limitations based on Plaintiff's mental impairments (Dkt. No. 15 at 8-12).

Given that the ALJ evaluated limitations attributable to Plaintiff's "mental impairment[s]" at step three, it appears that their omission as severe impairments at step two was inadvertent (A.R. at 21-22).  *See Johnson v. Astrue*, 811 F. Supp. 2d 618, 628 (E.D.N.Y. 2011) ("[I]f plaintiff's HIV was not a severe impairment under step two, that would end the ALJ's inquiry with respect to plaintiff's HIV and there would be no need for the ALJ to proceed to determine whether it is a listed impairment under step three and whether plaintiff possesses the residual functional capacity to perform her past relevant work under step four.  Thus, the Court concludes that the ALJ found plaintiff's HIV to be a severe impairment and its absence from the decision is an inadvertent typographical error.").  At step three, the ALJ stated, "[t]he severity of [Plaintiff's] mental impairment[s] does not meet or medically equal the criteria of Listings 12.04 and 12.06" (A.R. at 22).  Those Listings address "affective disorders," including depression, *Mulcahey v. Colvin*, No. 2:14-cv-523-JHR, 2015 WL 3948130, at *2 (D. Me. June 28, 2015), and "anxiety-related disorders."  *Morrison v. Astrue,* Civil No. 09-141-P-S, 2009 WL 5218058, at *2 (D. Me. Dec. 30, 2009).

In making the step three determination, the ALJ followed the "special technique" required to evaluate mental impairments. 20 C.F.R. § 404.1520a(a), (b)(1).[7] This procedure requires the ALJ to first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [she] has a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b). If the claimant is found to have a medically determinable mental impairment, at step two, the ALJ must determine whether it is severe by "rat[ing] the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," which describes "four broad functional areas." 20 C.F.R. § 404.1520a(b)(2), (c)(3). *See Arruda v. Barnhart*, 314 F. Supp. 2d 52, 78–79 (D. Mass. 2004) ("'At step two,' [20 C.F.R. § 404.1520a] requires the ALJ to 'rate the degree of functional limitation resulting from the claimant's mental impairment(s) to determine whether they are "severe."'") (quoting *Rosado v. Barnhart,* 290 F. Supp. 2d 431, 437 (S.D.N.Y. 2003)). "These four functional areas [known as the 'paragraph B criteria'] are 'activities of daily living,' 'social functioning,' 'concentration, persistence or pace,' and 'episodes of decompensation.'" *Topoulos*, 2018 WL 1358817, at *11 (quoting 20 C.F.R. § 404.1520a(c)(3)). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. "Pursuant to the social security regulations, the first three of these criteria are to be marked using a 'five-point scale: none, mild, moderate, marked, and extreme.'" *Topoulos,* 2018 WL 1358817, at *11 (citing *Green v. Astrue*, 588 F. Supp. 2d 147, 152 (D. Mass. 2008); citing 20 C.F.R. § 404.1520a(c)(4)). "The fourth functional area is rated on a four-point scale: '[n]one, one or two, three, [and] four or more.'" *Id.* (alterations in original) (quoting 20 C.F.R. §§ 404.1520a(c)(4)). After the ALJ rates

---

[7] The decision refers to the version of 20 C.F.R. § 404.1520a that was in effect at the time Plaintiff filed her claim. *See Topoulos v. Berryhill*, Civil Action No. 16-cv-11636-IT, 2018 WL 1358817, at *11 n.8 (D. Mass. Mar. 16, 2018).

the degree of functional limitation resulting from the claimant's mental impairment, he determines its severity. *See* 20 C.F.R. § 404.1520a(d). According to the regulations, generally, if the limitations in the first three areas are "none" or "mild" and there are no identified episodes of decompensation, the ALJ will find the impairment[s] are not severe. *See Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (Sotomayor, J.); 20 C.F.R. § 404.1520a(d)(1). "If the claimant's mental impairment[s] [are] severe, the [ALJ] will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder." *Kohler,* 546 F.3d at 266 (citing 20 C.F.R. § 404.1520a(d)(2)). *See Dias v. Colvin,* 52 F. Supp. 3d 270, 278-79 (D. Mass. 2014) ("To meet or medically equal listing 12.04 for an affective disorder and listing 12.06 for an anxiety related disorder, the claimant 'must satisfy the criteria for Paragraph A, and either the criteria of Paragraph B or the criteria of Paragraph C.'") (quoting *Phaneuf v. Colvin,* Civil No. 13-cv-139-LM, 2014 WL 2864727, at *6 (D.N.H. June 24, 2014)). If the ALJ finds that the claimant's severe medical impairment "neither meets nor is equivalent in severity to any listing," he will assess the RFC. 20 C.F.R. § 404.1520a(d)(3).

The ALJ's intent to find Plaintiff's mental impairments severe at step two can be inferred from his step three findings. The ALJ assessed Plaintiff's paragraph B criteria as follows: mild restrictions on activities of daily living; mild difficulties with social functioning; moderate difficulties with concentration, persistence, or pace; and no episodes of decompensation (A.R. at 22). These findings were consistent with the only medical opinions in the record related to Plaintiff's mental health impairments; that is, those of the state agency consultants (*id.* at 86, 102-03). The ALJ further determined that "the evidence fails to establish the 'paragraph C' criteria" (*id.* at 22). He then took the next step of comparing Plaintiff's paragraph B functional

ratings to the Listings that address depression and anxiety (*id.*).  *See* 20 C.F.R. §
404.1520a(d)(2).  If the ALJ had not considered Plaintiff's depression and anxiety to be severe
impairments at step two, he would not have considered whether the conditions met or equaled
the Listings.  *See Newman v. Astrue*, Civil Action No. 5:06-cv-00955, 2008 WL 4298550, at *16
(S.D. W. Va. Sept. 18, 2008).  Inasmuch as the ALJ's analysis reveals that he treated Plaintiff's
mental impairments as though he had found them severe at stage two of the sequential evaluation
process, the omission of depression and anxiety from the listing of severe impairments at step
two was harmless.

There are additional reasons supporting the determination that the ALJ's omission of
Plaintiff's mental impairments at step two does not require remand.  Because step two's "severity
requirement is . . . a *de minimus* policy, designed to do no more than screen out groundless
claims," *McDonald v. Sec'y of Health & Human Servs.,* 795 F.2d 1118, 1124 (1st Cir. 1986), the
ALJ's finding that Plaintiff had other severe impairments is all that step two required as long as
the ALJ considered all of Plaintiff's functional limitations in crafting the RFC (A.R. at 21).  *See*
*Heatley v. Comm'r of Soc. Sec.,* 382 F. App'x 823, 824-25 (11th Cir. 2010); *Coe v. Colvin,* Civil
Action No. 15-30037-MGM, 2016 WL 3350995, at *6 (D. Mass. June 15, 2016).  By limiting
Plaintiff's work to "simple routine tasks which require concentration for 2 hour time periods," the
RFC took into account Plaintiff's moderate limitation in her ability to concentrate and to
maintain persistence and pace (A.R. at 22).  Plaintiff fails to identify any additional functional
limitations attributable to her mental impairments.  Thus, "any error in failing to explicitly
include [anxiety and depression] in the list of severe impairments was harmless because the ALJ
appropriately considered [them] throughout the evaluation process and accounted for the
impairment[s] in his determination of Plaintiff's RFC."  *Coe,* 2016 WL 3350995, at *6 (citing

*Perez v. Astrue,* Civil Action No. 11-30074-KPN, 2011 WL 6132547, at *4 (D. Mass. Dec. 7, 2011)).  *See Newman*, 2008 WL 4298550, at *16 (finding the ALJ's omission of claimant's myofascial pain syndrome at step two harmless where the ALJ considered the condition individually under the Listings and in assessing the claimant's RFC).

Notwithstanding the ALJ's omission of depression and anxiety as severe impairments at step two, remand is not warranted on this basis.

### B. The ALJ's failures to address all treatment records and to assign weight to Dr. Purins' opinion were harmless errors.

#### 1. All treatment records relevant to Plaintiff's physical limitations were consistent with the RFC.

Plaintiff next contends that the ALJ erred in evaluating Plaintiff's physical condition by ignoring her 2015 and 2016 treatment records (Dkt. No. 13 at 12-13).  The 2015 and 2016 evidence, however, was cumulative of the treatment records the ALJ relied on to support the RFC.

"It is well settled that an ALJ may not make factual findings by ignoring evidence." *Dias*, 52 F. Supp. 3d at 285 (D. Mass. 2014) (citing *Nguyen,* 172 F.3d at 35).  However, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."  *NLRB v. Beverly Enters.–Mass., Inc.,* 174 F.3d 13, 26 (1st Cir. 1999).  *See DaSilva-Santos v. Astrue*, 596 F. Supp. 2d 181, 188 (D. Mass. 2009) ("The hearing officer was not obligated . . . to address directly every piece of evidence.").  "The failure to address certain evidence . . . will not undermine an ALJ's conclusion '"when that conclusion was supported by citations to substantial medical evidence in the record and the unaddressed evidence was either cumulative of the evidence discussed by the [ALJ] or otherwise failed to

support the claimant's position."'" *Dias,* 52 F. Supp. 3d at 285 (quoting *Coggon v. Barnhart,* 354 F. Supp. 2d 40, 55 (D. Mass. 2005)).

The ALJ indicated that he carefully considered "all the evidence" (A.R. at 19, 22). Plaintiff faults the ALJ for failing to mention the 2015 and 2016 treatment records from New England Orthopedic Surgeons (NEOS), Western Massachusetts Podiatry Associates (WMPA), Baystate Rehabilitation, Pioneer Spine and Sports Physicians (PSSP), and Langlitz Chiropractic & Massage (Dkt. No. 13 at 13). Most of the records to which Plaintiff points address treatment of Plaintiff's right foot and lower back.[8] Plaintiff, however, has not identified 2015 and 2016 treatment records that contradict the ALJ's assessments of her physical limitations (Dkt. No. 13 at 13-15). *See Garcia v. Colvin,* C.A. No. 13-cv-30044-MAP, 2014 WL 458192, at *4 (D. Mass. Feb. 3, 2014) (the burden of proof in challenges to administrative findings generally rests on the petitioner) (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). *Contrast DaSilva-Santos,* 596 F. Supp. 2d at 188-89 (remanding where claimant's "recitation of the evidence omitted from the body of the decision demonstrate[d] that with regard to a number of issues, there was a marked conflict in the evidence that went unaddressed in the decision.").

The 2015 and 2016 records of WMPA and NEOS and the 2016 records of Baystate Rehabilitation addressed the treatment of Plaintiff's right foot (A.R. at 500-25, 526-28, 614-15, 723-31, 783-817).[9] The record of Plaintiff's February 25, 2015 visit to Anthony L. Sarage,

---

[8] The other records cited by Plaintiff discuss treatment of her knee in 2015 and report the results of the March 7, 2016 CT scan that indicated diverticulitis (*see, e.g.,* A.R. at 529-76, 728, 770-72). Plaintiff fails to explain how these records might support an alteration of the ALJ's RFC assessment.

[9] Some of the NEOS records cited by Plaintiff are from 2012 and, therefore, were considered by the prior ALJ in denying Plaintiff's October 19, 2012 application (*see, e.g.,* A.R. at 65, 506, 507, 510). *See* 20 C.F.R. § 404.1512(b)(1) (SSA develops a claimant's complete medical history for at least the 12 months preceding the month in which she files the application unless there is a

D.P.M., of WMPA indicates that the corticosteroid injection of her right plantar and heel and the low dye strappings reduced her pain by 60% (*id.* at 528). Dr. Sarage directed her to continue stretching and using night splints and recommended soft orthotics (*id.*). On June 3, 2015, Plaintiff reported that consistent use of the soft orthotics made her "'pretty comfortable'" (*id.* at 527). On May 17, 2016, Baystate Rehabilitation Care discharged Plaintiff from physical therapy for her right foot and she transitioned to stretching exercises at home (*id.* at 784). On May 24, 2016, PA-C James Vreeland of NEOS observed that there was no erythema, ecchymosis, or swelling of Plaintiff's right foot (*id.* at 724). It was tender to palpation near the origin of the plantar fascia and "about the lateral aspect of the calcaneus," but there was no tenderness of the forefoot or midfoot (*id.*). Plaintiff's calf was soft and nontender (*id.*). Plaintiff's active range of motion for plantarflexion/dorsiflexion was good and the ankle ligaments were stable (*id.*). On June 3, 2016, Dr. Sarage of WMPA injected Plaintiff's right plantar medial heel with corticosteroid and noted that Plaintiff "has not been performing stretching, icing regimen or utilizing orthotics as previously discussed" (*id.* at 615). Plaintiff walked with a normal gait and station during her July 27, 2016 visit to PSSP (*id.* at 858). In summary, the treatment records concerning Plaintiff's plantar fasciitis that were omitted from the ALJ's decision are not at odds with the records on which he relied and the RFC limiting Plaintiff to sedentary work included a further limitation reflecting Plaintiff's inability to operate controls with her right foot (*id.* at 22, 23-24).

The 2015 and 2016 records of PSSP and Langlitz Chiropractic & Massage concerning the treatment of Plaintiff's lower back do not contradict the findings of Dr. Brown or the opinions of

---

reason to believe that development of an earlier period is necessary or unless the claimant indicates that her disability began less than 12 months before she filed the application.). Plaintiff filed the application under consideration on November 6, 2014 (A.R. at 185).

the state agency consultants, which the ALJ considered (*id.* at 25-26, 87-89, 104-06, 492-93, 604-11, 634-70, 768-69, 856-59).  During Plaintiff's February 12, 2016 chiropractic visit, Plaintiff described her lower back pain as a 3 on a scale of 0 to 10 (*id.* at 635).  The notes of Plaintiff's April 27, 2016 visit to PSSP indicate that Plaintiff's MRI "demonstrated a normal lumbar spine, but she was noted to have bilateral SI joint sclerosis" and "demonstrated evidence of sacroiliitis" (*id.* at 605, 607, 609).  Because "[s]he failed a course of physical therapy in the past," she wanted to proceed with bilateral SI joint injections (*id.* at 607).  An injection that she received in June provided "some relief" (*id.* at 857).  Anne Nunnelly PA-C prescribed gabapentin for pain on July 27, 2016 (*id.* at 859).  Plaintiff testified that the medication relieved her pain "a little" at night (*id.* at 49-50).  None of Plaintiff's treatment providers recommended surgery for her back or provided opinion evidence about functional limitations attributable to her back problems.

Plaintiff's failure to identify evidence showing that she was disabled combined with her performance of daily living activities including bicycling and using a treadmill, doom her argument that the ALJ's failure to discuss the 2015 and 2016 treatment records resulted in an erroneous RFC (*id.* at 22, 26).  *See Doyle v. Colvin*, Civil Action No. 14-30098-MGM, 2015 WL 3649795, at *4 (D. Mass. June 10, 2015) ("To succeed, 'Plaintiff must show not only the existence of evidence in the record supporting her position but must also demonstrate the evidence relied on by the ALJ is either insufficient, incorrect, or both.'") (quoting *Greene v. Astrue,* Civil Action No. 11-30084-KPN, 2012 WL 1248977 at *3 (D. Mass. Apr.12, 2012)).

2.  The ALJ's failure to assign weight to the state agency medical consultant's opinion was harmless because the RFC was more favorable to Plaintiff than the consultant's assessments.

The opinions of Dr. Benanti and Dr. Purins, the state agency medical consultants, are the only record opinions addressing Plaintiff's physical RFC (A.R. at 87-89, 104-06). The state agency consultants agreed on Plaintiff's physical limitations (*id.*). Plaintiff seeks remand because while the ALJ's decision reflected his review of Dr. Purins' opinion of Plaintiff's physical RFC, he failed to assign it a specific weight (Dkt. No. 13 at 13-15; A.R. at 25-26). The Commissioner counters that any error was harmless because the ALJ's RFC was more favorable to Plaintiff than Dr. Purins' (Dkt. No. 15 at 15).

The ALJ must consider the medical opinions in the record. *See Bourinot v. Colvin*, 95 F. Supp. 3d 161, 175 (D. Mass. 2015); 20 C.F.R. § 404.1527(b), (c).[10] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). *See also* 20 C.F.R. § 404.1527(d)(2) (SSA uses medical sources to provide evidence "on the nature and severity" of a claimant's impairments and considers the opinions in determining the RFC). Licensed physicians are "acceptable medical sources" whose opinions must be considered by the ALJ. 20 C.F.R. § 404.1513(a)(1). The ALJ determines how much weight to afford each medical opinion. *See* 20 C.F.R. § 404.1527(c). Unless an ALJ gives a treating source's opinion controlling weight, his decision must explain the weight he gives to other opinions, including those of state agency medical consultants. *See* 20 C.F.R. § 404.1527(e). *See also* SSR 96-6p, 1996 WL 374180 *1 (July 2, 1996) (an ALJ must explain the weight given to the opinions of state agency medical consultants).

---

[10] The cited regulation, 20 C.F.R. § 404.1527, was in effect on November 6, 2014, the date Plaintiff filed her claim (A.R. at 185). *See* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

The ALJ's decision demonstrates that he was aware of the reports of two licensed physicians, Dr. Purins and Dr. Brown (A.R. at 25-26).  Although Plaintiff is correct that the SSA's regulations required the ALJ to explain what weight he assigned to Dr. Purins' opinion and to explain the basis for the assignment and the ALJ failed to follow the proper procedure, the error was harmless because Dr. Purins' opinion did not support a finding of disability and the ALJ's RFC was more favorable to Plaintiff than Dr. Purins' RFC analysis.  "If the ALJ's RFC is 'generally consistent' with the findings in a medical opinion, or if the RFC is 'more favorable' to the claimant than the opinion's findings, then '[t]here is no reason to believe that a further analysis or weighing of [the] opinion could advance [the claimant's] claim of disability.'"  *Perez Guerrero v. Colvin*, CASE NO. 14-23841-CIV-LENARD/GOODMAN, 2016 WL 4807953, at *5 (S.D. Fla. Mar. 23, 2016) (alterations in original) (quoting *Thompson v. Colvin*, 551 F. App'x 944, 947-48 (10th Cir. 2014)).

According to the ALJ, Plaintiff could not perform her past job as a food service worker, but had the RFC to perform the full range of sedentary work with the following additional limitations:  no climbing, twisting, kneeling, crawling; no right foot controls; no rough terrain; no heights; no ladders; and no hazardous machinery (A.R. at 22).  Dr. Purins' opinion -- that Plaintiff was not disabled because she could perform her past relevant job as a food service worker in an assisted living facility -- was less favorable to Plaintiff (*id.* at 26, 105-06, 108-09). The Dictionary of Occupational Titles ("DOT") classified Plaintiff's former occupation, a food service worker, hospital, 319.677-014, as medium work (*id.* at 57-58).[11]  *See* DICTIONARY OF

---

[11] "Medium Work - Exerting 20 to 50 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or 10 to 25 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or greater than negligible up to 10 pounds of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to

OCCUPATIONAL TITLES 319.677-014, 1991 WL 672771 (4th ed. rev. 1991). Consequently, the

ALJ's failure to explain the weight he afforded Dr. Purins' opinion was harmless. *See Thompson,*

551 F. App'x at 948 ("A remand for the ALJ to weigh opinions that . . . do not support a finding

of disability would be futile."); *Ortiz v. Colvin*, CIVIL ACTION NO. 13-12793-DPW, 2015 WL

4577106, at *8 (D. Mass. July 30, 2015) ("There is no reversible error when an ALJ gives a

claimant the benefit of the doubt."); *Escobar v. Colvin,* Civil Action No. 13-10186-JGC, 2014

WL 1159822, at *19 (D. Mass. Mar. 20, 2014) (an error that was favorable to the plaintiff was

deemed harmless).

The ALJ was permitted to "render[] common-sense judgments about functional capacity"

based on Dr. Purins' and Dr. Brown's reports and conclude that Plaintiff had the RFC to perform

sedentary work with the additional limitations specified in the RFC. *Gordils v. Sec'y of Health &*

*Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (per curiam). Although Dr. Brown did not

provide an RFC assessment, his diagnoses of "chronic low back pain positive for scoliosis with

curve to the left" and "chronic bilateral foot pain, probable plantar fasciitis [of the] right foot, left

foot in remission" did not indicate that these conditions were disabling and he did not assign

functional limitations based on these impairments (A.R. at 25, 490-94). Because "the only

medical findings in the record suggested that [Plaintiff] exhibited little in the way of physical

impairments, but nowhere in the record did any physician state in functional terms that [Plaintiff]

had the exertional capacity to meet the requirements of sedentary work, the ALJ [was] permitted

to reach that functional conclusion himself." *Gordils,* 921 F.2d at 329. When taken in

combination, Dr. Purins' and Dr. Brown's reports constitute substantial evidence to support the

---

move objects. Physical demand requirements are in excess of those for Light Work."
DICTIONARY OF OCCUPATIONAL TITLES 319.677-014, 1991 WL 672771 (4th ed. rev. 1991).

ALJ's assessment of Plaintiff's RFC and remand is not warranted. *See id.; see also Ward*, 211 F.3d at 656 ("a remand is not essential if it will amount to no more than an empty exercise.").

### C. The inconsistency between the condition posed in the hypothetical to the VE and the limitation in the RFC is harmless.

Finally, Plaintiff complains that the hypothetical posed to the VE at the hearing contained a restriction that the ALJ omitted from the RFC (Dkt. No. 13 at 15-20). Specifically, the ALJ included "no more than occasional stooping, bending, or balancing" in the hypothetical, but omitted this limitation from the RFC (A.R. at 22, 58). Because the limitations in the hypothetical were more restrictive than the limitations in the RFC, however, the omission was harmless. "'[I]f the [expert] believed that jobs existed . . . which could be performed by a person with the set of limitations identified in the hypothetical, then a person with a set of limitations less restrictive than that identified in the hypothetical - i.e., the set of limitations identified in the [RFC] - could perform those same jobs.'" *Doyle*, 2015 WL 3649795, at *5 (alterations in original) (quoting *Poland v. Apfel,* No CIV C-99-128-B, 2000 WL 36950 at *14 n.19 (D.N.H. Dec. 22, 1999)). *See Garcia*, 2014 WL 458192, at *4 ("If an individual who is *completely* precluded from exposure to a specified condition is found capable of performing certain jobs, it necessarily follows that the same person is capable of working in jobs with only *occasional* exposure."); *Warren v. Astrue,* C.A. No. 10–cv–30053–MAP, 2011 WL 31292, at *5 (D. Mass. Jan.4, 2011) ("the hypothetical posed to the vocational expert was more restrictive and, thus, more favorable to Plaintiff."). *Contrast Slovak v. Barnhart*, No. Civ. 02-231-M, 2003 WL 21246049, at *7 (D.N.H. May 29, 2003) (the hypotheticals were less restrictive than the ALJ's RFC assessment).

### IV. CONCLUSION

If the record contained an opinion from any medical source supporting Plaintiff's claim of disability, the court would remand this case with directions that the ALJ reconsider the medical

evidence of record and explain his treatment of the medical opinions in the record in compliance with the regulations. There is, however, no opinion evidence supporting Plaintiff's claim of disability. Notwithstanding multiple errors in the ALJ's written decision that should have been avoided, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Dkt. No. 14) is GRANTED for the above-stated reasons. The case will be closed.

It is so ordered.

Dated: March 20, 2019

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. MAGISTRATE JUDGE